UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| JAMES P. CULBERSON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 4:07CV1671 CDP |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying James Culberson's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Claimant Culberson brings this action asserting that he is disabled because he suffers a variety of complications stemming from a lower back injury followed by a lumbar fusion and microdisectomy. The Administrative Law Judge concluded that Culberson was disabled from the time of his injury on May 28, 2003 through February 4, 2005, but that he was not disabled thereafter. Culberson appeals the decision denying him disability benefits after February 4, 2005. Because I conclude that the ALJ's decision is supported by substantial evidence, I will affirm the decision.

## Procedural History

On December 13, 2004, James Culberson filed the current application for a Period of Disability and Disability Insurance Benefits. The Social Security Administration denied Culberson's application at the initial level and a timely hearing request was filed. Culberson appeared and testified at a hearing held on January 6, 2006. The ALJ issued an opinion on February 22, 2006 partially upholding the denial of benefits. On July 27, 2007, the Appeals Council of the Social Security Administration denied Culberson's request for review. The ALJ's determination thus stands as the final determination of the commissioner. Culberson filed this appeal on September 26, 2007.

## Testimony Before the ALJ

Culberson testified that he was 44 years of age at the time of his hearing, had completed the twelfth grade, was 5' 10" tall, and weighed approximately 300 pounds. He testified that he had worked in a variety of retail jobs in stores. Culberson indicated that these jobs required standing and walking for most of his shift. He testified that in May 2003, while working at his last job, he fell and injured his back. Culberson stated that after the injury he was taken by ambulance to the hospital.

Culberson further testified that after a course of conservative treatment, Dr.

Matthew Gornet performed surgery. He testified that he had physical therapy and used a bone stimulator after his surgery. He described his post surgery pain as essentially the same as his pain before his surgery. He described back pain radiating down his leg with numbness and tingling in the leg. Culberson testified that he is taking Hydrocodone for pain, and although it helps, it does not completely relieve the pain. With regard to his daily living, Culberson stated he is not working, he does not do exercises but does try to walk a little, and he tries to do his physical therapy exercises. He testified that he is not able to lift 25 pounds and even two liters of soda causes symptoms. Culberson estimated that he could sit for no more than about 20 minutes at a time, and needs to lie down seven or eight times in a normal day to relieve his pain. He indicated that he can cook microwave dinners, read a book or newspaper, rinse dishes, dust, and shower. He stated that he is not able to bend or stoop, unload the dishes, vacuum, or tie his shoes.

## Medical Records

On May 28, 2003, Culberson injured his lower back. On June 5, 2003, a magnetic resonance imaging study of the lumbosacral spine showed a posterior disc bulge at the L5-S1 level. There was also moderate hypertrophy of the ligamentum flavum and bony hypertrophy of the facet joins at the L3-4 and L4-5 levels.

Dr. Kumar. On June 10, 2003, Ashok K. Kumar, M.D. diagnosed Culberson with a lumbosacral strain and lumbar spine degenerative disease. Culberson was administered an epidural steroid injection on June 19, 2003. Culberson participated in physical therapy from June 24, 2003 through July 18, 2003. After participating in various exercises, strengthening, electrical stimulation, and cold packs, there was essentially no change in Culberson's condition. His gait remained slow and guarded, and he continued to walk with a limp favoring his left leg.

On July 22, 2003, Dr. Kumar suggested that Culberson undergo a nerve conduction electromyogram. Dr. Kumar believed that Culberson could perform sedentary duty with the following restrictions: no lifting greater than 10 pounds; no repetitive bending, pushing, pulling, or twisting; and Culberson would need to alternate between sitting and standing. A nerve conduction study was reported to be normal on July 29, 2003. Dr. Kumar discharged Culberson on July 29, 2003.

Dr. Mirkin. A lumber myelogram and computed tomography scan performed on August 12, 2003 showed a bilateral pars intraarticular defect at L5, with facet joint hypertrophy and a small disc protrusion at L5-S1, and a small disc bulge at L4-5. On August 15, 2003, R. Peter Mirkin, M.D., noted that Culberson walked with an antalgic gait due to spondyloysis at L5 and a disc protrusion at L5-S1. On September 10, 2003, Dr. Mirkin stated that Culberson walked with a limp and he had limited range

of motion of the lumbar spine. Straight leg raising was mildly positive and Dr. Mirkin recommended a lumbar decompression fusion.

Dr. Gornet. In January 2004, Culberson was examined by Matthew F. Gornet, M.D. Culberson still complained of back pain radiating into his left foot. On April 16, 2004, Dr. Gornet performed a partial corpectomy at S1 with an anterior decompression anterior lumbar fusion at L5-S1 with instrumentation and allograft. A posterior laminectomy and foraminotomy at L4-5 and L5-S1 on the left, a facet fusion at L5-S1, and a bilateral posterior fixation at L5-S1 were also performed. Due to ongoing low back pain radiating down his left leg, Culberson was provided with a bone stimulator.

Culberson participated in further physical therapy for approximately 19 sessions, from December 13, 2004 through January 21, 2005. Culberson continued to report ongoing bilateral leg symptoms with aching in the low back region. He denied any significant improvement since his surgery in 2004, and continued to offer "fluctuating" pain complaints. He demonstrated minimal improvement in his active lumbar range of motion and no increased strength or general conditioning gains. The therapist stated that further progress may have been prevented by Culberson's lack of commitment to therapy and low level of motivation. The therapist also noted that "inconsistencies between subjective information and

objective data were present during the entire duration of care."

Dr. Gornet examined Culberson again on February 3, 2005, approximately nine months after his surgery. Culberson's left leg pain was slowly improving, however he continued to experience some left leg numbness. Dr. Gornet diagnosed Culberson with isthmic spondylolisthesis at L5-S1, discogenic low back pain, and foraminal stenosis on the left at L4-5 and L5-S1. Dr Gornet stated that Culberson could return to work on February 4, 2005, with restrictions of no lifting greater than 25 pounds and no repetitive bending.

Dr. Gornet examined Culberson on July 25, 2005 and rated Culberson with a 50 percent permanent partial disability rating to the lumbar spine as a whole. Dr. Gornet limited Culberson to lifting no more than 25 pounds on a regular basis, and no repetitive bending.

Medical and Vocational Opinion Evidence

Dr. David T. Volarich, D.O. performed an independent medical examination on August 26, 2005. Dr. Volarich stated that Culberson was not a candidate for surgery and that he was able to perform most activities of self-care. Dr. Volarich recommended that Culberson undergo vocational assessment to determine how he might best return to work, while restricted to sedentary type work activities. Dr. Volarich concluded the following: Culberson needed to avoid all bending, twisting,

lifting, pushing, pulling, carrying, climbing and other similar tasks to an as needed basis; Culberson should not handle any weight greater than 20-25 pounds, and limit this task to an occasional basis assuming proper lifting techniques; Culberson should not handle weight over his head or away from his body, nor should he carry weight over long distances or uneven terrain; Culberson should avoid remaining in a fixed position for any more than about 30 minutes at a time including both sitting and standing; Culberson should change positions frequently to maximize comfort and rest when needed including resting in a recumbent fashion.

Timothy G. Lalk, a vocational rehabilitation counselor, interviewed Culberson on November 14, 2005. Based upon the restrictions set forth by Dr. Gornet, Lalk concluded that Culberson could return to some type of customer service position in which he was working primarily at a counter or desk. Based on the more limited restrictions set forth by Dr. Volarich, however, Lalk concluded that Culberson would not be capable of engaging in substantial gainful employment and that he could not compete for any position due to his medical condition. Lalk noted that Culberson appeared to have academic abilities that might allow him to pursue post-secondary training. Lalk recommended that if Culberson were to acquire professional skills which were extremely marketable, he could find work in a sedentary position in which the abilities he brought to his employer would allow

that employer to give him accommodations such as full control of his work efforts and duration throughout a workday which would allow Culberson to rest as needed, even in a reclined position.

## Legal Standard

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, a court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, *id.*, or because the court would have decided the case differently. *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). In determining whether existing evidence is substantial, a court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000) (quoting *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999)).

To determine whether the decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

(1) the credibility findings made by the Administrative Law Judge;

(2) the education, background, work history, and age of the claimant;

(3) the medical evidence from treating and consulting physicians;

(4) the plaintiff's subjective complaints relating to exertional and non-exertional impairments;

(5) any corroboration by third parties of the plaintiff's impairments; and

(6) the testimony of vocational experts when required which is based upon a proper hypothetical question.

*Brand v. Secretary of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

Disability is defined in the social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. § 42 U.S.C. 416(i)(1); § 42 U.S.C. 1382c(a)(3)(A); § 20 C.F.R. 404.1505(a); 20 C.F.R. 416.905(a). In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five-step procedure.

First, the commissioner must decide if the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity, he is not

disabled.

Next, the Commissioner determines if the claimant has a severe impairment which significantly limits the claimant's physical or mental ability to do basic work activities. If the claimant's impairment is not severe, he is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or medical facts alone, and the claimant has a severe impairment, the Commissioner reviews whether the claimant can perform his past relevant work. If the claimant can perform his past relevant work, he is not disabled.

If the claimant cannot perform his past relevant work, the Commissioner must evaluate whether the claimant can perform other work in the national economy. If not, the Commissioner declares the claimant disabled. § 20 C.F.R. 404.1520; § 20 C.F.R. 416.920.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if it is uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d

1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. *See, e.g., Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the objective medical evidence; (2) the subjective evidence of the duration, frequency, and intensity of plaintiff's pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the dosage, effectiveness and side effects of any medication; and (6) the claimant's functional restrictions.

*Id.* at 1322.

## The ALJ's Findings

The ALJ found that Culberson was not disabled after February 4, 2005, considering his age, education, work experience and residual functioning capacity. He issued the following specific findings:

1. The claimant met the disability insured status requirements of the Social Security Act on May 28, 2003, the date the claimant stated he became unable to work, and continues to meet them through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since May 28, 2003.

3. The medical evidence establishes that the claimant has Isthmic spondylolisthesis at L5-S1, discogenic low back pain, and foraminal

stenosis on the left at L4-5 and L5-S1. The combination of these impairments is "severe" as defined in the Social Security Act. There is no evidence of a "severe" mental impairment. Furthermore, the claimant's impairments are not attended by medical findings which meet or equal the requirements of any impairment listed in Appendix I, Subpart P to Regulations No. 4.

4. The claimant's allegations, including his subjective complaints, are credible to the extent of the limitations found in this decision.

5. Since February 5, 2005, the claimant has had the residual functional capacity to occasionally lift and carry 10 points; frequently lift and carry less than 10 pounds; stand/walk 2 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; occasionally stoop and crouch; and push/pull consistent with his lifting limitations. From May 28, 2003 through February 4, 2005, the claimant did not have the capacity so sustain sedentary work activity on a regular and continuing basis (eight hours per day and five days per week, or an equivalent schedule). (20 CFR 404.1545)

6. The claimant is unable to perform his past relevant work.

7. The claimant is 44 years old, which is defined as a "younger individual." (20 CFR 404.1563)

8. The claimant completed the 12th grade. (20 CFR 404.1564)

9. The claimant does not have any acquired work skills which are transferable to the skilled or semi-skilled work activities of other work. (20 CFR 404.1568)

10. In view of the claimant's vocational characteristics, if he could perform the full range of work at the sedentary level, Medical Vocational Rule 201.28 would apply and would direct a finding of not disabled. However, for the period from May 28, 2003 through February 4, 2005, the claimant's additional limitations reduced the relevant occupational base to the extent that there no longer remained a significant number of jobs that the claimant could perform.

11. For the period since February 5, 2005, Medical Vocational Rule 201.28 applies and directs a finding of "not disabled."

12. The claimant was under a "disability," as defined in the Social Security Act, from May 28, 2003 through February 4, 2005, but not thereafter. (20 CFR 404.1520(g))

The ALJ noted that Dr. Volarich placed greater limitations on Culberson than did Dr. Gornet. However the ALJ gave greater weight to Dr. Gornet's opinion because he was a treating physician. The record does not contain any opinion of a treating physician indicating that Culberson's limitations were as extensive as described by Dr. Volarich. The ALJ also noted Culberson's generally unpersuasive appearance and demeanor while testifying at the hearing. The ALJ believed that Culberson displayed exaggerated behavior related to pain and discomfort, and found that this behavior was consistent with statements from treating sources regarding symptom magnification.

Discussion

Culberson sets forth three arguments for why the ALJ's decision denying benefits after February 4, 2005 should be reversed. First, he argues that the ALJ improperly rejected subjective evidence of pain without a legally sufficient basis. Second, Culberson argues that the ALJ's determination of residual functional capacity was not supported by the medical evidence and testimony. Third,

Culberson argues that the ALJ improperly relied on Medical-Vocational Rule 201.28 ("the Grid") for a finding of no disability, because the ALJ failed to account for one or more non-exertional limitations.

1. <u>Subjective evidence of pain</u>

Evidence of pain is necessarily subjective in nature. Therefore, an ALJ must look to more than just objective medical evidence of pain, or the lack thereof, in determining whether and to what extent a claimant's pain affects ability to perform work-related activities. *Halpin v. Shalala*, 999 F.2d 342, 346 (8th Cir. 1993); *Delrosa v. Sullivan*, 922 F.2d 480, 485 (8th Cir. 1991). Under the framework set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1321-22 (8th Cir. 1984), an ALJ must fully consider all evidence relating to the subjective complaints, including the claimant's work record, as well as observations of the claimant by others (including treating and examining doctors) as to such matters as daily activities; the intensity, duration, and frequency of the pain and conditions causing and aggravating the pain; and functional limitations. *Ford v. Astrue*, 581 F.3d 979, 982 (8th Cir. 2008). An ALJ must consider these matters but does not have to discuss each one of them in relation to the claimant. An ALJ is permitted to discount the claimant's complaints if they are "inconsistent with the evidence as a whole." *Id*. (quoting *Casey v. Astrue*, 503 F.3d 687, 691 n.3 (8th Cir. 2007)). When discounting a

claimant's complaints, the ALJ is required to "detail the reasons for discrediting the testimony and set forth the inconsistencies found." *Ford*, 581 F.3d at 982 (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)).

The ALJ in Culberson's case gave proper consideration to Culberson's subjective complaints. Culberson testified that he needed to change positions frequently to manage his pain, could sit for no more than 20 minutes at a time, and needed to lie down seven or eight times in a normal day to relieve pain. The ALJ took note of such factors as Culberson's use of medications and work history, noting in particular that his work record was a positive factor weighing toward his credibility. However, other considerations such as Culberson's description of his daily activities, the lack of restrictions placed on Culberson by his treating physicians, and consistent references in his medical record to exaggerated pain behavior weighed against his credibility.

The ALJ noted that no treating physician had restricted Culberson's daily activity by saying he needed to frequently change position. This was one factor the ALJ considered in his analysis. Additionally, the ALJ found that Culberson's unpersuasive appearance and demeanor weighed against his credibility and was consistent with the record evidence of symptom magnification and exaggerated

behavior.[1] The inconsistencies between Culberson's own testimony and the objective medical evidence and lack of restrictions from treating physicians thus supported a finding that Culberson's subjective complaints were not credible. Culberson's first argument therefore fails.

2. <u>Determination of Residual Functional Capacity</u>

Culberson next argues that the ALJ's determination of his residual functioning capacity (RFC) was not supported by substantial evidence. A claimant's RFC is the most he or she can do despite limitations. RFC is assessed based on all the relevant evidence in the case record. 20 C.F.R. § 404.1545(a)(1). The ALJ here concluded that Culberson retained the RFC to occasionally lift and carry 10 pounds; frequently lift and carry less than 10 pounds; stand/walk two hours in an eight hour workday; sit six hours in an eight-hour workday; occasionally stoop and crouch; and push/pull consistent with his lifting limitations. This RFC determination was consistent with the findings made by Dr. Gornet, Culberson's treating physician.

Generally, the opinion of a treating physician is given controlling weight if it

---

[1]Specifically, the ALJ noted that Culberson was told he could change position if he became uncomfortable while testifying. Although Culberson claimed he could stay in one position for 20 minutes before needing to move, he began to change position within the first four minutes of his testimony. Culberson claims this was nothing more than just an ordinary shifting in his chair, and had nothing to do with any claimed symptom magnification. On the record before me, however, there is no basis from which to discredit the ALJ's finding on this point.

is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other sustainable evidence in the record. 20 C.F.R. § 404.1527(d)(2), 416.927(d)(2). A treating physician's opinion is given deference over those of consulting physicians. *Thompson v. Sullivan*, 957 F.2d 611, 614 (8th Cir. 1992); *Henderson v. Sullivan*, 930 F.2d 19, 21 (8th Cir. 1991).

Culberson argues that the ALJ unreasonably based his RFC determination on the opinion of Dr. Gornet, rather than the opinion of consulting physician Dr. Volarich. It is true that Dr. Volarich provided a lengthy and well-reasoned medical opinion. Dr. Volarich's opinion is ten pages in length, detailing Culberson's medical history, the details of his accident, his surgery, his subjective complaints, and a neurologic examination. Dr. Gornet, on the other hand, summarized his assessment of Culberson's physical limitations in a one paragraph note to a follow-up visit after his surgery. This is not to say, however, that Dr. Gornet's medical opinion was unreliable. Dr. Gornet had been Culberson's treating physician for over a year when he made his assessment and cleared Culberson to return to work. The medical record documents numerous visits Culberson had with Dr. Gornet, both during the time the ALJ found Culberson to be disabled and after. Dr. Gornet's records taken as a whole are thorough and his conclusions are well-supported. It was not unreasonable for the ALJ to rely on the medical opinion of

Culberson's treating physician, Dr. Gornet, in making an RFC determination.

Moreover, the opinions of Dr. Gornet and Dr. Volarich are not markedly different. The two physicians agreed with respect to Culberson's limitations in lifting objects and avoiding repetitive lifting or bending. The ALJ's RFC determination paralleled the findings of both doctors in these respects. The ALJ, however, disagreed with Volarich (and favored the opinion of Dr. Gornet) with respect to Culberson's ability to sit and stand for reasonable lengths of time without having to change position or lie down. The ALJ's decision to credit the opinion of Culberson's treating physician and to discredit the opinion of a one-time consulting physician was not unreasonable.

3. <u>Medical-Vocational Rule 201.28</u>

Culberson's final argument is that the ALJ improperly relied on Medical-Vocational Rule 201.28 ("the Grid") for a finding that Culberson was not disabled, because the Grid fails to account for Culberson's non-exertional limitations. Non-exertional limitations include those "other than [limitations] on strength but which nonetheless reduce an individual's ability to work." *Sanders v. Sullivan*, 983 F.2d 822, 823 (8th Cir. 1992). Examples include "mental, sensory, or skin impairments," as well as impairments which result in "postural and manipulative limitations or environmental restrictions." 20 C.F.R. Part 404, Subpart P,

Appendix 2.

Where a claimant suffers from a combination of exertional and non-exertional impairments, and the relevant Guidelines establish that he or she is not entitled to a finding of disability based solely on exertional impairments, the ALJ must consider the extent to which the claimant's work capacity is further diminished by non-exertional limitations. *Thompson v. Bowen*, 850 F.2d 346, 349 (8th Cir. 1988). If a claimant's characteristics differ in any material respect from the characteristics contemplated by the Guidelines, the Guidelines may not be applied. *Id*. Instead, "the Secretary must produce expert vocational testimony or other similar evidence to establish that there are jobs available in the national economy for a person with the claimant's characteristics." *Id*.

Here, the ALJ did not call a vocational expert. Instead, the ALJ relied on the Guidelines for a finding that jobs existed in the national economy that Culberson was able to perform, and therefore concluded Culberson was not disabled. Reliance on the Guidelines was proper in this case because the ALJ found that Culberson did not suffer from any non-exertional limitations. It is not exactly clear what sort of non-exertional limitations Culberson is claiming the ALJ overlooked. To the extent that Culberson argues the ALJ failed to consider limitations relating to Culberson's ability to sit or stand for extended periods, those

claims were properly considered and rejected when determining Culberson's RFC. The ALJ found that Culberson possessed the full range of ability necessary for sedentary work. This finding was supported by the medical record evidence. It was unnecessary then for the ALJ to hear any vocational expert testimony, because the Guidelines properly took into account all necessary considerations for someone in Culberson's condition. Any non-exertional limitations Culberson claims to have suffered were discredited as part of the ALJ's RFC analysis.

The ALJ's determination that Culberson suffered no disability after February 4, 2003 is supported by substantial evidence in the record as a whole. The decision should therefore be upheld.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed. A separate judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 27th day of August, 2008.